Colin G. Bell, Esquire (CB2864)
coling@hankinsandman.com
Stephen Hankin, Esquire
stephenh@hankinsandman.com
Hankin Sandman & Palladino, P.C.
30 South New York Avenue
Atlantic City, New Jersey 08401
(609) 344-5161
(609) 344-7913 (facsimile)
Attorneys for Plaintiffs

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **IM LLC-I and IL MULINO USA, LLC,**<br><br>　　　　　**Plaintiffs,**<br><br>　　　　　　　**v.**<br><br>**IL MULINO, LLC (of Peapack, New Jersey) and MARTINO MALSORI, jointly, severally, and in the alternative,**<br><br>　　　　　**Defendants.** | CIVIL ACTION<br><br>Case No.<br><br><br>**VERIFIED COMPLAINT** |

Plaintiffs, IM LLC-I and Il Mulino USA, LLC, by and through their counsel, the law firm of Hankin Sandman & Palladino, by way of Verified Complaint against Defendants Il Mulino LLC (of Peapack, New Jersey) and Martino Malsori, say as follows:

## NATURE OF THE ACTION

1.   This is an action for trademark infringement, trade dress infringement, and trademark dilution under the Lanham Act,

15 U.S.C. § 1051 et seq., trafficking in counterfeit trademarks under N.J.S.A. 56:3-13.16, unfair competition under N.J.S.A. 56:4-1 et seq, and unjust enrichment under the common law of the State of New Jersey.

## PARTIES

2.    Plaintiff, IM LLC-I, is a Delaware Limited Liability Company and citizen of the Commonwealth of Pennsylvania, having a principal place of business at 1761 Yardley Langhorne Road, Yardley, Pennsylvania 19067-5506, and is actually engaged in business in Atlantic County, New Jersey.

3.    Plaintiff, Il Mulino USA, LLC, is a Delaware Limited Liability Company and citizen of the Commonwealth of Pennsylvania, having a principal place of business at 1761 Yardley Langhorne Road, Yardley, Pennsylvania 19067-5506, and is likewise engaged in business in Atlantic County, New Jersey (IM LLC-I and Il Mulino USA, LLC, collectively, "IM").

4.    Defendant, Il Mulino LLC (of Peapack, N.J.), is a New Jersey Limited Liability Company and citizen of the State of New Jersey, which appears to have a principal place of business at 89 Main Street, Peapack, New Jersey, 07977.

5.    Defendant, Martino Malsori, purports to be the "chef/owner" of Il Mulino, LLC (of Peapack, New Jersey) and is an apparent citizen of the State of New Jersey who can be located at

89 Main Street Peapack, New Jersey, 07977 (Il Mulino LLC of Peapack, New Jersey and Martino Malsori, collectively "Defendants").

## JURISDICTION

6.     Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1331 because this case involves claims arising under the laws the United States of America, pursuant to 15 U.S.C. § 1121 which grants federal court original jurisdiction over violations of the Lanham Act, and pursuant to 28 U.S.C. § 1332 because Plaintiffs and all Defendants are citizens of different states and the amount in controversy exceeds $75,000.00.

7.     Additionally, jurisdiction over IM's state law claims is appropriate pursuant to 28 U.S.C. §1367 because they are part of the same case and controversy that give rise to the claims over which the Court exercises original jurisdiction pursuant to 15 U.S.C. 1121, 28 U.S.C. §1331, and 28 U.S.C. §1332.

## FACTS COMMON TO ALL COUNTS

8.     IM owns and operates the world famous IL MULINO, IL MULINO NEW YORK, and TRATTORIA IL MULINO restaurants.

9.     IM has a dozen locations in the United States, including restaurants in New York City, New York; Long Island, New York; and two (2) locations in Atlantic City, New Jersey.

10.   The IM restaurants are continuously touted by professionals in the industry as culinary leaders, receive numerous accolades and positive reviews, and are extremely popular in their respective locations.

11.   IM's iconic New York City restaurant has been in existence for over 30 years and recognized as the best Italian restaurant in New York City by the prestigious Zagat Survey.

12.   IM has used a variety of legally-protected trademarks, trade dresses and design elements, including "Il Mulino" and "Il Mulino New York," for many years on and in connection with the advertisement and sale of its services and goods in interstate commerce, including, but not limited to, restaurant and bar services, food items and clothing, and websites it operates under the domains ilmulino.com and ilmulinony.com (collectively the "IM Marks").   True and correct copies of IM's various trademark registrations are annexed hereto as **Exhibit A.**

13.   IM LLC-I owns the IM Marks, and has assigned to Il Mulino USA, LLC, which owns and operates the IM restaurants, a perpetual right to use the IM Marks.

14.   IM has expended substantial time, money and other resources developing, advertising and otherwise promoting the IM Marks; and, as a result, the IM Marks are iconic, widely recognized, exclusively associated by consumers, the public, and

the industry as being high quality products and services, have generated significant goodwill, are distinctive within the industry, and have acquired strong secondary meaning.

15.   The registrations in **Exhibit A** are valid and subsisting, in full force and effect, and are incontestable pursuant to 15 U.S.C. §1065.

16.   The registrations of the IM Marks constitute *prima facie* evidence of their validity and conclusive evidence of IM's exclusive right to use the IM Marks in connection with the goods and services identified therein and other commercial goods and services.

17.   The registration of the IM Marks also provides sufficient notice to Defendants of IM's exclusive ownership and rights in the IM Marks.

18.   The IM Marks are famous marks as defined by 15 U.S.C. § 1125c.

19.   The IM marks at issue in this case have been continuously used and never abandoned.

20.   IM is also the owner of a variety of unique and distinctive trade dresses consisting of a combination of one or more features, including alphanumeric scripts, sizes, shapes, colors designs, layouts, menu items, recipes, and other non-functional elements comprising the overall look and feel

incorporated into IM restaurants and products (the "IM Trade Dresses").

21.   Consumers immediately identify IM as he single source of high quality products bearing the IM Trade Dresses.

22.   The IM Trade Dresses associated with IM products and services are independent of the functional aspects of IM products.

23.   IM has employed the IM Trade Dresses associated with its products and services exclusively and without interruption, and the IM Trade Dresses have never been abandoned.

**DEFENDANTS' ACTS OF INFRINGEMENT AND UNFAIR COMPETITION**

24.   Defendants are engaged in designing, advertising, promoting, distributing, selling and/or offering for sale products and services in interstate commerce bearing the logos and source-identifying indicia and design elements that are purposeful imitations of the IM Marks and IM Trade Dresses.

25.   In approximately March, 2012, Defendants opened a restaurant called "Il Mulino Osteria" at 89 Main Street, Peapack, New Jersey.

26.   Annexed hereto as **Exhibit B** is a true and correct copy of an advertisement for "Il Mulino Osteria" published in *Vicinity Magazine*.

27.   According to its website, *Vicinity Magazine* is "mailed directly to more than 46,000 single-family homes in upscale areas of Essex, Somerset, Union and Morris counties, the sophisticated publication serves as an invaluable resource for its educated, affluent audience."  See www.vicinitymagazine.com.

28.   As demonstrated by comparing **Exhibit B** with **Exhibit C** (constituting a true and correct copy of a photograph of the IM's New York City location), Defendants have used a alphanumeric script in the name of its restaurant that is similar to that used by IM, and have also minimized the "Osteria" portion of the name.

29.   Moreover, the advertisement contains the claim that "Il Mulino has been voted the #1 Italian Restaurant in NYC by Zagats."

30.   As "Il Mulino Osteria" is in no way associated with any IM restaurant, this representation is clearly designed to mislead the public, represent an association with the IM restaurants, and capitalize on the IM Marks and IM Trade Dresses.

31.   Moreover, in a recent telephone conversation with IM principal, Jerry Katzoff, Defendant Malsori represented himself as a former employee of IM's New York City location.

32.   Accordingly, Malsori is specifically aware of the IM restaurants, IM Marks, and IM Trade Dress and the substantial prestige and goodwill associated therewith.

33.   Moreover, Defendants have copied or attempted to copy the complete experience of dining at an IM restaurant.

34.   Annexed hereto as **Exhibit D** are true and correct copies of photographs of Defendants' restaurant taken on June 23, 2012.

35.   Annexed hereto as **Exhibit E** is a true and correct copy of portion of IM's menu appearing printed from IM's www.ilmulino.com website, which is identical to the menus in IM's restaurant.

36.   Comparing the photograph of Defendants' menu in **Exhibit D** with **Exhibit E** demonstrates that Defendants are using a font and layout nearly identical to IM's menu.

37.   Annexed hereto as **Exhibit F** is a true and correct copy of the typical tabletop layout for IM restaurants, including its distinctive gas lamp.

38.   Comparing the photographs in **Exhibit D** to **Exhibit F** demonstrates that Defendants have even copied the same tabletop lamp.

39.   Defendants' signage depicted in **Exhibit D** is also substantially identical to IM's signage.   Compare **Exhibit D** with **Exhibit C.**

40.   Finally, again as depicted in **Exhibit D,** Defendants have copied IM's iconic salami and zucchini appetizer served at every table.

## THE CONFUSION CAUSED BY DEFENDANTS' CONDUCT

41.   Defendants' conduct is likely to cause confusion among consumers, and, in fact, has resulted in actual confusion in the marketplace and harm to IM's reputation and goodwill.

42.   Annexed hereto as **Exhibit G** is a true and correct copy of the restaurant profile for Defendants' restaurant on www.urbanspoon.com, a popular website/blog the rates restaurant experiences, which demonstrates the confusion and negative impact of Defendants' actions on IM's reputation and goodwill.

43.   One customer of IM's New York City flagship restaurant who dined at Defendants' restaurant stated on www.urbanspoon.com that "it felt like [he/she] was in the Il Mulino in New York." See **Exhibit G**.

44.   Additionally, numerous other customers posted negative reviews regarding the quality of the food and service at Defendants' restaurant. See **Exhibit G**.

45.   In addition to the www.urbanspoon.com profile, a simple Google search for "Il Mulino Peapack" reveals that Defendants' restaurant is profiled and/or advertised on numerous other websites.

46.   Annexed hereto as **Exhibit H** is a true and correct copy of an email IM received on June 13, 2012 from a confused customer who ate at Defendants' restaurant believing it was associated

with the IM restaurants, and who alerted IM to Defendants' "terribly dishonest" advertising.

47. The aforementioned confusion has and will cause irreparable harm to IM's goodwill and reputation.

48. Defendants have no license, authority or other permission from IM to use any of the IM Marks or IM Trade Dresses in connection with designing, advertising, promoting, distribution, selling and/or offering for sale any products or services.

49. On June 6, 2012, counsel for IM wrote to Defendants to demand immediate cessation of their blatant trademark infringement. A true and correct copy of the demand letter is annexed hereto as **Exhibit I.**

50. To date, Defendants have ignored IM's demand and refused to cease their infringing activity.

51. Defendants have been engaging in the above-described illegal infringing conduct knowingly, intentionally, and/or with reckless disregard or willful blindness to IM's rights, or with bad faith, for the purpose of trading on the goodwill and reputation of IM, the IM Marks and the IM Trade Dresses.

52. Defendants' conduct, as described above, has and will likely create a false impression and deceive consumers, the public, and the industry into believing that there is a

connection or association between Defendants' restaurant and IM's restaurants and products.

53.   Upon information and belief, Defendants intend to continue to continue designing, advertising, promoting, distribution, selling and/or offering for sale products and services that infringe upon the IM Marks and IM Trade Dresses, unless restrained by the Court.

54.   IM has suffered and will continue to suffer immediate and irreparable harm as a result of Defendants' activities for which there is no adequate remedy at law.

## COUNT I
**(Trademark Infringement in violation of 15 U.S.C. §1114)**

55.   The allegations of all preceding paragraphs are included herein as if set forth at length.

56.   As described above, Defendants have used and are continuing to use marks or spurious designations that are identical to, or substantially indistinguishable from, the IM Marks.

57.   The foregoing acts of Defendants are intended to cause, have caused, and are likely to continue to cause confusion and mistake, and to deceive consumers, the public, and the trade into believing that Defendants' restaurant and products are authorized or associated with IM.

58.   As demonstrated by the foregoing acts, Defendants have acted with knowledge of IM's ownership of the IM marks, with deliberate intent, or willful blindness to the incalculable goodwill in the IM Marks.

59.   Defendants' acts constitute trademark infringement in violation of 15 U.S.C. §1114.

60.   Upon information and belief, Defendants have made and will continue to make substantial profits and gains from the aforesaid infringement to which they are not entitled to under law or equity.

61.   Defendants' aforesaid conduct, unless restrained, will result in future lost sales and profits to IM and will impair IM's goodwill and reputation with respect to the quality and distinction of IM's goods and services.

## COUNT II
### (Trademark Dilution in violation of 15 U.S.C. §1125c)

62.   The allegations of all preceding paragraphs are included herein as if set forth at length.

63.   The IM Marks are famous and distinctive.

64.   Defendants' commercial use of the IM name and IM Mark dilutes the distinctive quality of IM's trademarks.

65.    As   demonstrated   by   the   conduct   set   forth   above, Defendants   intended   to   sell   their   goods   and   services   on   IM's reputation and/or dilute the IM Marks.

66.    Defendants'   conduct   constitutes   trademark   dilution   in violation of 15 U.S.C. §1125.

### COUNT III
**(Trade Dress Infringement in violation of 15 U.S.C. §1125)**

67.    The   allegations   of   all   preceding   paragraphs   are included herein as if set forth at length.

68.    By way of the conduct set forth above, Defendants have, without   authorization   from   IM,   designed,   advertised,   promoted, distributed,   sold   and/or   offered   for   sale   products   and   services which   contain   a   collection   of   design   elements   that   are confusingly similar to the IM Trade Dresses.

69.    The   IM   Trade   Dresses   are   used   in   interstate   commerce, non-functional,   inherently   distinctive,   and   have   acquired   strong secondary meaning.

70.    The foregoing acts of Defendants are intended to cause, have   caused,   and   are   likely   to   continue   to   cause   confusion   and mistake,   and   to   deceive   consumers,   the   public,   and   the   trade   into believing that Defendants' restaurant and products are authorized or associated with IM.

71.   As demonstrated by the foregoing acts, Defendants have acted with knowledge of IM's ownership of the IM Trade Dresses, with deliberate intent, or willful blindness to the incalculable goodwill in the IM Trade Dresses.

72.   Defendants' acts constitute trade dress infringement in violation of 15 U.S.C. §1125.

73.   Upon information and belief, Defendants have made and will continue to make substantial profits and gains from the aforesaid infringement to which they are not entitled to under law or equity.

74.   Defendants' aforesaid conduct, unless restrained, will result in future lost sales and profits to IM and will impair IM's goodwill and reputation with respect to the quality and distinction of IM's goods and services.

## COUNT IV
### (Willful False and Misleading Advertising/Unfair Competition in violation of 15 U.S.C. §1125a)

75.   The allegations of all preceding paragraphs are included herein as if set forth at length.

76.   Defendants have been and are now promoting, marketing, and advertising their restaurant, goods, and services by using the IM Marks, without IM's license, authorization, or permission.

77.   Defendants' use of IM's trademarks in connection with the sale, offering for sale, distribution, and/or marketing and

advertising of Defendants' goods or services is likely to cause, and has in fact caused, confusion and mistake and is likely to deceive the public as to the affiliation, connection, or association of Defendants' restaurant with IM or as to the origin, sponsorship, or approval of Defendants' goods, services, or commercial activities by IM.

78. Defendants' unauthorized use of the IM Marks as set forth above constitutes a false and misleading description and representation to the effect that the goods and services that Defendants actually sells are affiliated or connected with IM, that IM is the source of Defendants' goods or services, and/or that IM has sponsored or approved of Defendants' goods, services, or activities.

79. As demonstrated by the conduct set forth above, Defendants knew that the use of IM's trademark in their services and products was false and deceptive prior to their publication thereof.

80. These false and misleading descriptions and representations are made in the context of the commercial promotion and advertisement of Defendants' goods and services in interstate commerce.

81. There is actual deception and/or a tendency to deceive a substantial portion of the intended consuming public as a

result of Defendants' services, goods and advertising containing the service mark of IM.

82. The public and the trade are likely to be induced to purchase Defendants' goods or services in the mistaken belief that those goods are services are the same goods or services that are promoted or sold by IM when, in fact, they are not.

83. Defendants' acts constitute false and misleading advertising and unfair competition in violation of 15 U.S.C. §1125a.

84. Defendants' aforesaid conduct, unless restrained, will result in future lost sales and profits to IM and will impair IM's goodwill and reputation with respect to the quality and distinction of IM's goods and services.

### COUNT V
**(Trademark Counterfeiting in violation of N.J.S.A. 56:3-13.16)**

85. The allegations of all preceding paragraphs are included herein as if set forth at length.

86. Defendants have used, and will continue to use, reproductions, counterfeits, copies, or colorable imitations of the IM Marks in connection with the sale, distribution, offering for sale, or advertising in the State of New Jersey of goods and services, which use is likely to cause confusion or mistake or to deceive as to the source of origin of the goods or services.

87. Defendants' acts constitute trademark counterfeiting in violation of <u>N.J.S.A.</u> 56:3-13.16.

88. Defendants' aforesaid conduct, unless restrained, will result in future lost sales and profits to IM and will impair IM's goodwill and reputation with respect to the quality and distinction of IM's goods and services, for which IM has no adequate remedy at law.

### COUNT VI
**(Unfair Competition in violation of <u>N.J.S.A.</u> 56:4-1 et seq.)**

89. The allegations of all preceding paragraphs are included herein as if set forth at length.

90. Defendants' foregoing conduct constitutes unfair competition in violation of <u>N.J.S.A.</u> 56:4-1 et seq..

91. Defendants have damaged and will continue to damage IM.

92. Defendants' aforesaid conduct, unless restrained, will result in future lost sales and profits to IM and will impair IM's goodwill and reputation with respect to the quality and distinction of IM's goods and services, for which IM has no adequate remedy at law.

### COUNT VII
**Unjust Enrichment**

93. The allegations of all preceding paragraphs are included herein as if set forth at length.

94.   By way of the foregoing conduct, Defendants have been unjustly enriched while IM has been unjustly impoverished in violation of the common law of the State of New Jersey.

**WHEREFORE**, Plaintiffs IM LLC-I and Il Mulino USA, LLC demand judgment against Defendants Il Mulino LLC and Martino Malsori, jointly, severally, and in the alternative for:

A.   A declaration that Defendants have violated 15 U.S.C 1114, 15 U.S.C. §1125, N.J.S.A. 56:3-13.16, N.J.S.A. 56:4-1 et seq., and have been unjustly enriched in violation of New Jersey common law.

B.   Granting preliminary and permanent injunctive relief restraining and enjoining Defendants, their officers, agents, employees and all other persons or entities active in concert or participation with them, from:

1.   Using IM's name, the IM Marks, or the IM Trade Dresses in their business name, advertisement, promotional material, or marketing efforts.

2.   Advertising, marketing, promoting, supplying, distributing, offering for sale, or selling any product or service which bear the IM name, IM Marks, or IM

Trade Dresses or any other mark or design element substantially similar or confusing thereto, or any other activity constituting an infringement of any of IM's rights in the IM Marks or IM Trade Dresses.

3. Engaging in any other activity constituting unfair competition with IM, or acts and practices that deceive customers, the public, or trade, including, without limitation, the designations and design elements associated with IM.

4. Engaging in any other activity that will cause the distinctiveness of the IM Marks or IM Trade Dresses to be diluted.

C. Granting preliminary and permanent injunctive relief requiring Defendants to cancel all advertisements, promotions, and marketing efforts that utilize the IM name, IM Marks, or IM Trade Names.

D.   Granting preliminary and permanent injunctive relief requiring Defendants to cease utilizing the IM name, IM Marks, or IM Trade Names in any manner associated with the operation of their restaurant.

E.   Requiring Defendants to file with this Court and serve on IM's counsel within thirty (30) days after the entry of an injunction a report, in writing and under oath, setting forth in detail the manner and form in which Defendants complied with the injunction.

F.   Directing such other and further relief as the Court may deem necessary and appropriate to prevent consumers, the public or the trade from deriving any erroneous impression that any goods or services at issue in this action were advertised, marketed, promoted, supplied, distributed, offered for sale, sold by, or associated with IM.

G.   Awarding IM compensatory damages, including, but not limited to, all profits realized by Defendants from their wrongful acts and all of IM's lost profits, or in the alternative, statutory damages.

H.   Treble Damages.

I.   Punitive Damages.

J.   Attorney's fees, interest and costs of suit.

K.   Pre-judgment interest.

L.   Such other and further relief as the Court deems just and proper.

**HANKIN SANDMAN & PALLADINO, PC**
Attorneys for Plaintiffs

Dated: June 25, 2012

By: */s/Colin G. Bell*
Colin G. Bell, Esquire (CB2864)
coling@hankinsandman.com

By: _____
Stephen Hankin, Esquire
stephenh@hankinsandman.com
30 South New York Avenue
Atlantic City, NJ 08401
(609) 344-5161
(609) 344-7913 (facsimile)

## L.CIV.R. 11.2 CERTIFICATION

The undersigned certifies that the matter in controversy in the within action is not the subject of any other action pending in any court or of any pending arbitration or administrative proceeding.

HANKIN SANDMAN & PALLADINO, PC
Attorneys for Plaintiffs

Dated: June 25, 2012

By: /s/Colin G. Bell
Colin G. Bell, Esquire CB2864)

By: _____
Stephen Hankin, Esquire

**VERIFICATION**

I declare under the penalty of perjury that all of the allegations in the within Verified Complaint, except those made upon information and belief, are true and correct.

Date: **6·26·12**

JERRY KATZOFF